Matter of Hamblin v DiNapoli (2024 NY Slip Op 03787)

Matter of Hamblin v DiNapoli

2024 NY Slip Op 03787

Decided on July 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 11, 2024

CV-23-1223
[*1]In the Matter of Adam Hamblin, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:June 5, 2024

Before:Pritzker, J.P., Lynch, Ceresia, Fisher and Mackey, JJ.

Schwab & Gasparini, PLLC, White Plains (James A. Resila of counsel), for petitioner.
Letitia James, Attorney General, Albany (Alexandria Twinem of counsel), for respondent.

Pritzker, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for accidental disability retirement benefits.
Petitioner, a police detective and paramedic, applied for accidental disability retirement benefits claiming that he was permanently incapacitated from performing his job duties as a result of injuries sustained in three incidents that occurred in July 2007, February 2012 and June 2017.[FN1] Petitioner's application was denied upon a finding that the incidents did not constitute accidents within the meaning of Retirement and Social Security Law § 363. Following a hearing, the Hearing Officer upheld the denial of the application, finding that the underlying incidents were either a risk inherent in the performance of his duties or foreseeable and, therefore, did not constitute accidents for purposes of accidental disability retirement. Respondent adopted the Hearing Officer's decision, and this CPLR article 78 proceeding ensued.
"As the applicant, petitioner bore the burden of establishing that his disability arose from an accident within the meaning of the Retirement and Social Security Law, and respondent's determination in this regard will be upheld if supported by substantial evidence" (Matter of Bornholz v DiNapoli, 225 AD3d 1079, 1080 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Compagnone v DiNapoli, 213 AD3d 7, 8 [3d Dept 2023]). For purposes of accidental disability retirement benefits, "an accident is defined as 'a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact' " (Matter of Kubala v New York State & Local Retirement Sys., 220 AD3d 993, 993 [3d Dept 2023], quoting Matter of Kenny v DiNapoli, 11 NY3d 873, 874 [2008]). "An injury which occurs without an unexpected event as the result of activity undertaken in the performance of ordinary employment duties, considered in view of the particular employment in question, is not an accidental injury" (Matter of Rizzo v DiNapoli, 39 NY3d 991, 992 [2022] [internal quotation marks and citations omitted]; see Matter of Cazzari v DiNapoli, 224 AD3d 1075, 1076 [3d Dept 2024]; Matter of Kubala v New York State & Local Retirement Sys., 220 AD3d at 993-994; Matter of Flannelly v Gardner, 210 AD3d 1265, 1265-1266 [3d Dept 2022]).
Regarding the July 14, 2007 incident, petitioner testified that he was in his patrol vehicle when he saw a suspect climbing a fence. According to petitioner, when he stepped out of his vehicle in pursuit of the suspect, whom he ultimately placed in custody, his right leg got stuck in a crack or uneven pavement resulting in an injury to his right knee. "Pursuing and subduing a fleeing suspect is an ordinary employment duty of a police officer" (Matter of Chern v DiNapoli, 225 AD3d 1088, 1090 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Van [*2]Wyen v New York State Comptroller, 215 AD3d 1217, 1219 [3d Dept 2023]; Matter of Castellano v DiNapoli, 197 AD3d 1478, 1480 [3d Dept 2021]; Matter of Grall v DiNapoli, 196 AD3d 962, 964-965 [3d Dept 2021]). Additionally, the reports related to the incident, which respondent credited, make no mention of any defect in the pavement. Given the discrepancy in petitioner's testimony and the contemporaneous reports, and according deference to respondent's credibility assessment (see Matter of Zanchelli v DiNapoli, 198 AD3d 1058, 1059 [3d Dept 2021]), substantial evidence supports respondent's determination that petitioner's injury arose from an inherent risk of his duties as a police officer, and, therefore, the incident did not constitute an accident for purposes of the Retirement and Social Security Law (see Matter of Van Wyen v New York State Comptroller, 215 AD3d at 1219; Matter of Grall v DiNapoli, 196 AD3d at 964-965; Matter of Quartucio v DiNapoli, 110 AD3d 1336, 1337 [3d Dept 2013]; Matter of Pappalardo v Hevesi, 34 AD3d 1021, 1021-1022 [3d Dept 2006]).
Nor are we persuaded that the February 17, 2012 incident was a compensable accident. Petitioner testified that on the day of the incident he was working as a police paramedic assigned to the vehicle that responds to calls with the ambulance. Due to staffing issues, the police officer who was assigned to the ambulance was unfamiliar with the equipment needed on the ambulance. As such, petitioner inspected the equipment and inventory in the ambulance to ensure that it was ready for the next emergency call, which petitioner testified was part of his duties. After entering the ambulance from the side door and inventorying the interior of the ambulance, petitioner testified that he stepped out of the rear door of the ambulance to inspect the equipment in the exterior compartment. According to petitioner, when he exited the ambulance, he expected that the step — which was usually folded down except when loading the stretcher in or out of the ambulance — would be there. The step, however, was folded up, causing petitioner to fall to the ground and injure his elbow. By his own admission, petitioner testified that he had exited and entered an ambulance so many times that he was "complacent" on the day at issue and did not look down to see if the step was opened nor did he turn a light on in the back of the ambulance despite it being midnight and dark outside. Further, petitioner's application for accidental disability retirement benefits, as well as the contemporaneous injury report, seemingly contradict petitioner's testimony, as they indicate that the incident occurred because petitioner "lost [his] footing exiting [the] vehicle" or "slipped on the ambulance step." In view of the foregoing, respondent's conclusion is supported by substantial evidence given that petitioner was engaged in his ordinary job duties of inspecting the supplies and equipment on the ambulance and that his "injury was the ordinary [*3]and foreseeable result of his own inattention or misstep" (Matter of Quartucio v DiNapoli, 110 AD3d at 1338 [internal quotation marks and citations omitted]; see Matter of Starnella v Bratton, 92 NY2d 836, 839 [1998]; compare Matter of Loia v DiNapoli, 164 AD3d 1513 [3d Dept 2018]).
We reach a different conclusion, however, regarding the incident on June 22, 2017, during which the retractable portion of the stretcher jammed causing instantaneous pain and injury to petitioner's shoulder and neck. Specifically, petitioner testified that when he squeezed the handle to extend the retractable head portion of the stretcher and pulled, which petitioner noted usually required "a little bit of force to push it in and out," he was able to extend it a little bit before it unexpectedly jammed — something that petitioner testified had never happened before. Petitioner testified that thereafter it took four firefighters banging on the handle with tools to finally extend the head section to the proper position. Although extending the retractable head portion of the stretcher was no doubt part of petitioner's job duties, the precipitating external event, i.e., the jamming of the retractable head section of the stretcher, was sudden, unexpected and not a risk in his ordinary employment duties. As petitioner's testimony reflects, this appears to have been a malfunction in the equipment (see Matter of Crone v DiNapoli, 201 AD3d 1260, 1262 [3d Dept 2022], lv denied 38 NY3d 910 [2022]; Matter of Loia v DiNapoli, 164 AD3d at 1515; Matter of Scharp v DiNapoli, 104 AD3d 1041, 1041-1042 [3d Dept 2013]; compare Matter of Little v DiNapoli, 85 AD3d 1273, 1274-1275 [3d Dept 2011]), not, as found by respondent, to be akin to a lifting or exertional injury. Accordingly, the denial of petitioner's application on the ground that the incident did not constitute an accident is not supported by substantial evidence (see Matter of Loia v DiNapoli, 164 AD3d at 1515; Matter of Scharp v DiNapoli, 104 AD3d at 1041-1042).
Ceresia, Fisher and Mackey, JJ., concur.
Lynch, J. (concurring in part and dissenting in part).
I agree with the majority, except with respect to the February 17, 2012 incident, which, in my view, constitutes an accident, not unlike that in Matter of Loia v DiNapoli (164 AD3d 1513 [3d Dept 2018]). Both cases involved a petitioner injured by stepping out of the rear door of an ambulance when a folding step was not in an expected down position. There is a slight nuance between the two cases in that the petitioner in Loia fell as he placed his foot on the edge of the upright step, causing it to open downward. Here, as petitioner went to step down, there was no step there, causing him to fall directly to the ground. In Loia, we determined that "the precipitating external event, i.e., the flipping down of the folding step, was sudden, unexpected and not a risk inherent in [the] petitioner's ordinary job duties" (id. at 1515). As a matter of basic common sense (see Matter [*4]of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 57 NY2d 1010, 1012 [1982]), the same characterization of petitioner's fall — as sudden, unexpected and not an inherent risk — should hold true here. The operative fact in both cases is that the rear step was not in the normal down position at the time each petitioner stepped out of the ambulance. Nor do I perceive any significant inconsistency between the statement in the employer's "Application for Accidental Disability Retirement," submitted on petitioner's behalf by the Chief of Police, that petitioner "lost footing exiting the vehicle" and petitioner's actual testimony that "I stepped off of the edge expecting to land on the step, but there was no step there." I reach the same conclusion with respect to the employer's report of injury prepared by an individual identified as a benefits assistant, explaining that petitioner "slipped on ambulance step." For these reasons, the petition should also be granted with respect to the February 17, 2012 incident.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as denied petitioner's application for accidental disability retirement benefits with respect to the June 22, 2017 incident; petition granted to that extent and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.

Footnotes

Footnote 1: Petitioner also sought benefits for incidents occurring in October 2006, December 2006, April 2009 and May 2013, but subsequently withdrew his claims with respect to those incidents.